**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN DOYLE,<br><br>               Plaintiff,<br><br>               v.<br><br>NEW JERSEY COMMISSION FOR THE BLIND AND VISUALLY IMPAIRED, BERNICE M. DAVIS, JADE BECHELLI, STEPHEN CHA, CHARLES P. MCKENNA, MADELAINE GARCIA, WILLIAM STIEBER, AALIYAH DENT, LOUIS J. MANCUSO, KEVIN HARRIS, ALLYON COHEN, NAPOLEON TRUESDALE, BRYAN MCCLAIN, AND ADAM SZCZEPANIAK, JOHN DOES (1-20),<br><br>               Defendants. | Case No. 2:26-cv-02753 (BRM) (CF)<br><br>**MEMORANDUM ORDER** |

**THIS MATTER** is before the Court on Plaintiff John Doyle's ("Doyle") submission of the Second Amended Complaint ("SAC"). (ECF No. 12.) Because Doyle is proceeding *in forma pauperis* (*see* ECF No. 11), the Court has an obligation to screen the SAC under 28 U.S.C. § 1915(e)(2).[1]

---

[1] On April 1, 2026, the Court screened (ECF No. 11) Doyle's First Amended Complaint (ECF No. 10) and dismissed all claims therein for failure to state a claim. That same day, Doyle filed his SAC, which reiterated the claims in the initial complaint, and added additional claims not present in the initial complaint or First Amended Complaint. (ECF No. 12.) It was unclear if Doyle intended his SAC to repair the deficits the Court identified or simply to add new claims. Therefore, the Court, out of an abundance of caution, issued a text order informing Doyle his SAC would not be screened until the time to file a new complaint had elapsed. (ECF No. 14.) The Court also granted Doyle fourteen (14) more days to file a new complaint (*Id.*), pursuant to his Motion for Reasonable Accommodations, which will be decided in due course (ECF No. 13). The time to file a new complaint has elapsed, and the Court therefore will screen the SAC.

Defendants are the New Jersey Commission for the Blind and Visually Impaired (the "Commission"), alongside eleven individual defendants alleged to have deprived him of his civil rights. (Doyle's First Am. Compl. (ECF No. 10) at 8–9.) In his SAC, Doyle adds multiple additional individual defendants: Jade Bechelli, Dr. Stephen Cha, and one to twenty fictitious John Doe defendants. (ECF No. 12 at 1.) Doyle alleges he is blind and that, despite knowing of his disability, Defendants are "engaged in a continuous course of conduct denying [Doyle] necessary accommodations" including the (1) "denial of assistive technology," (2) "failure to provide accessible materials" such as an audio version of the Commission's handbook, (3) "denial of scribe services," (4) "failure to provide effective communication," and (5) "failure to implement accommodations." (*Id.* at 1–2.) These failures allegedly caused an administrative case he brought to be dismissed. (ECF No. 12 at 1.) Doyle requests the Court intervene and enjoin the Defendants, requiring them to provide Doyle the requested accommodations alongside damages. (*Id.* at 9–10.)

Doyle brings two sets of claims against the Commission. The first is a claim that the Commission violated the Americans with Disabilities Act ("ADA"). The second is a claim that the Commission violated the Rehabilitation Act ("RA"). The Court considers ADA and RA "claims together because the substantive standards for determining liability are the same." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019) (quoting *McDonald v. Commw. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)). Namely, Doyle "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability. . . . [and] must also show intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Id.* at 288–89.

2

Doyle also brings claims against a group of defendants in their individual capacity for deprivation of rights under 42 U.S.C. § 1983. A plaintiff must allege facts sufficient to show "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). In his SAC, Doyle clarifies that the deprivation of rights in question involved a denial of "access to courts." (ECF No. 12 at 5–6.)

Doyle's SAC brings two additional causes of action: "Arbitrary Government Action" and "Failure of Accessible Communication," but does not clarify against which defendants these claims have been brought. (ECF No. 12 at 6.) The "touchstone of due process is protection against arbitrary government action." *United States v. Fattah*, 858 F.3d 801, 812 (3d Cir. 2017) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). Government action is "arbitrary in the constitutional sense when it is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* The right against arbitrary government action is traditionally invoked to protect defendants from prosecution where the evidence was gathered through profound police misconduct such as forcibly pumping the stomach of a suspect to obtain evidence the defendant possessed narcotics, *Rochin v. California*, 342 U.S. 165, 166 (1952), or where government agents "set[] up a speed laboratory" and were "completely in charge of the operation" in order to arrest their subordinates in the operation "creating a new crime for the sake of bringing charges against a person they had persuaded to participate." *United States v. Twigg*, 588 F.2d 373, 375–79 (3d Cir. 1978).[2]

---

[2] The right to be free against arbitrary government action has some application in civil contexts, for instance the government may not arbitrarily join a lawsuit as a co-plaintiff or defendant for the purpose of undermining or dismissing a claim or defense, but those applications are not relevant here. *See Polansky v. Exec. Health Res. Inc.*, 970 F.3d 835, 849 (3d Cir. 2021), *aff'd sub nom.*

The other new claim, Failure of Accessible Communication, is not a cognizable cause of action. The requirement for public entities to "ensure communications with applicants . . . with disabilities are as effective as communications with others" flows from 28 C.F.R. § 35.160(a). To that end, public entities "shall furnish appropriate auxiliary aids and services where necessary." 28 C.F.R. § 35.160(b). Failure to do so can give rise to liability under the ADA, but it is not a separate claim. *See, e.g., Anderson v. Pennsylvania Dep't of Pub. Welfare*, 1 F. Supp. 2d 456, 465–66 (E.D. Pa. 1998). Therefore, the Court will construe this claim as part of Doyle's overall ADA and RA claims.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)[] . . . is identical to the legal standard used when ruling on Rule 12(b)(6) motions." *Robinson v. Phelps*, 946 F. Supp. 2d 354, 361 (D. Del. 2013). "When screening a complaint . . . a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Rhodes v. Camden Redevelopment Agency*, Civ. A. No. 20-20337, 2021 WL 71597, at *2 (D.N.J. Jan. 8, 2021) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005)). Although a complaint "does not need detailed factual allegations," a plaintiff is obligated to plead facts sufficient "to provide the grounds of his entitlement to relief." *Rhodes*, 2021 WL 71597, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The law requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]," or "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)). In other words, he must

---

*United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (holding the government's intervention and seeking dismissal of False Claims Act allegations were not arbitrary where the complied with the requirements of Rule 41(a)).

4

allege facts that, "nudge[ his] claims . . . across the line of conceivable to plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009) (citing *Twombly*, 550 U.S. at 547).

Doyle's SAC remains short of this standard. The Court will start its analysis with the ADA and RA claims against the Commission before considering the deprivation of rights claim. Under the ADA and RA, Doyle must allege (1) he is a "qualified individual with a disability," and (2) that by reason of his disability he "was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination." *Furgess*, 933 F.3d at 288–89.

Doyle has only alleged the first element with specificity, namely that he is "legally blind and requires assistive technology." (ECF No. 12 at 1.) For the other elements, Doyle merely provides conclusory statements such as "defendants denied reasonable accommodations" and "defendants acted with deliberate indifference." (*Id.* at 5–6.) What assistive technologies and accommodations he requested, why they are reasonable, and on what basis they were denied are all absent from the SAC. (*Id.*) Furthermore, Doyle does not identify what "program, service, or activity" he was denied. *Furgess*, 933 F.3d at 288–89. Rather, Doyle claims Defendants' "conduct created structural barriers preventing Plaintiff from accessing services." (ECF No. 12 at 5.) Though Doyle alleges that the damage he suffered stems from "lost educational funding and opportunities," the only denied service he identifies with specificity remains "scribe services." (*Id.* at 2.) Doyle's SAC provides more clarity on the purpose of the scribe, namely "to complete required forms" to apply for educational accommodations. (*Id.*) But even with this information, there is still no information on what the basis for denial was. (*Id.*) It is not possible for the Court to determine whether Doyle has a cognizable claim under the ADA or RA from these allegations.

Doyle's claims against the individual defendants, new and old, are likewise deficient. On the face of his Initial Complaint, Doyle lists thirteen named individual defendants, and one to

5

twenty John Does allegedly responsible for the harm he has suffered. (*Id.* at 1.) However, unlike the First Amended Complaint which mentioned two of eleven individual defendants, Charles P. McKenna and Madelaine Garcia, the SAC does not mention a single individual defendant. (*Id.*) There is similarly no information on how any John Doe might have contributed to the wrongdoing at issue. (*Id.*) To have his claims against an individual defendant survive, Doyle must lay out how each defendant took actions that deprived him of his rights, and how they acted under color of law. *Groman*, 47 F.3d at 633. There are therefore no allegations of any conduct by any defendant that could amount to "denial of due process . . . equal protection . . . [and] access to courts." (*Id.* at 9.)

Finally, the Court addresses Doyle's novel claim that the Commission violated his right to be free of arbitrary government action in denying his application for accommodation. For his claim under the arbitrary action doctrine to succeed, Doyle must allege conduct by a government agent which "shock[s] the contemporary conscience." *Fattah*, 858 F.3d at 812. Instead, from the few details Doyle provides, his application was denied because he "could not complete [the] applications." (ECF No. 12 at 3.) Similarly, his administrative case was dismissed because Doyle did not "meaningfully participate." (*Id.*) These are entirely ordinary and legitimate reasons for a government agent to deny an application for assistance. On the rare occasions the Third Circuit found an "arbitrary abuse of government power," in the civil context it has been in situations where government workers acted with deliberate or wanton callousness, such as *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, where a social worker impermissibly separated a child from her family without any reasonable justification—a far cry from Doyle's complaints of bureaucratic mismanagement. 103 F.3d 1123, 1127 (3d Cir. 1997). To be sure, if Doyle was prevented from completing the applications or participating in the administrative hearings due to lack of reasonable accommodation (as Doyle alleges) that could give rise to an ADA claim. *See, e.g., Furgess*, 933

F.3d at 288. But the Court will not transform every ADA violation into a possible constitutional issue. Because Doyle's arbitrary action claim is legally infirm, it is futile to permit Doyle to amend it, and the claim is dismissed with prejudice.

Therefore, none of Doyle's claims are supported by sufficient factual allegations, and all are dismissed.

Accordingly, and for good cause appearing,

**IT IS** on this 7th day of May 2026,

**ORDERED** that Doyle's claim that the Defendants violated his Fifth Amendment right to be free of Arbitrary Government Action is **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** that the remaining claims in Doyle's Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**; in light of his pending Motion for Reasonable Accommodations (ECF No. 13), which will be decided in due course, Doyle has leave to file a third amended complaint limited to curing the deficiencies noted in this Order within ~~thirt~~y-five (35) days. Failure to amend the complaint within this time will result in automatic dismissal with prejudice and without further action from the Court; and it is further

**ORDERED** that the Clerk of Court shall mark this matter closed.

/s/ *Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

7